**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| CHIEN-MIN SUNG,<br><br>                   Plaintiff,<br><br>     v.<br><br>SAMSUNG ELECTRONICS CO. LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC., SAMSUNG SEMICONDUCTOR,<br>INC., and SAMSUNG AUSTIN<br>SEMICONDUCTOR LLC,<br><br>                  Defendants. | Case No. 4:23-cv-752<br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR INTER-DISTRICT TRANSFER**
**TO THE NORTHERN DISTRICT OF CALIFORNIA**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    BACKGROUND .................................................................................................2

    A.    The Asserted Patents and Accused Instrumentalities. ............................2

    B.    Sung Has No Relevant Connection To This District. ..............................2

    C.    Defendants' Manufacturing Facilities Are Predominantly Located In Korea. ...................................................................................................2

    D.    The Third-Party Suppliers Are Located In Korea, California, And Oregon. ..........4

    E.    Evidence Concerning Ownership Of The Asserted Patents Is In Taiwan. ..............5

    F.    Important Third-Party Prior Art Evidence Is Located in NDCA............................6

III.    LEGAL STANDARD..........................................................................................6

IV.    ARGUMENT .......................................................................................................7

    A.    This Action Could Have Been Brought In NDCA. ................................7

    B.    The Private Interest Factors Strongly Favor Transfer................................7

        1.    The Relative Ease Of Access To Sources Of Proof Favors Transfer. ...................................................................................7

            a.    Defendants' Relevant Sources Of Proof Are Not In This District.....................................................................8

            b.    Critical Third-Party Sources Of Proof Are Located In Korea, California, And Taiwan—None Is Located In This District.........................................................8

            c.    Sung's Relevant Sources Of Proof Are Not In This District. ..........9

        2.    The Availability Of Compulsory Process Strongly Favors Transfer.........10

        3.    The Convenience Of Willing Witnesses Strongly Favors Transfer..........11

        4.    There Are No Practical Problems With Transfer To NDCA....................13

    C.    The Public Interest Factors Favor Transfer. ........................................14

        1.    This District Has No Local Interest In Resolving This Dispute. ...............14

i

## <u>TABLE OF CONTENTS (cont'd)</u>

<u>Pages</u>

2.     The Remaining Public Interest Factors Are Neutral.................................15

V.     CONCLUSION.............................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*Bluestone Innovations, LLC v. LG Elecs., Inc.*,
    940 F. Supp. 2d 310 (E.D. Va. 2013) ........................................................................ 10, 13

*Empty Barge Lines II, Inc. v. DREDGE LEONARD FISHER*,
    441 F. Supp. 2d 786 (E.D. Tex. 2006) ........................................................................... 10

*Fairfield Indus. Inc. v. Wireless Seismic, Inc.*,
    No. 13-CV-903, 2014 WL 4829071 (E.D. Tex. Sept. 26, 2014) .................................... 14

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
    867 F. Supp. 2d 859 (E.D. Tex. 2012) ............................................................................. 8

*In re Apple Inc.*,
    979 F.3d 1332 (Fed. Cir. 2020) ........................................................................................ 6

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ................................................................................. 10

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ................................................................................. 14

*In re Genentech*,
    566 F.3d 1338 (Fed. Cir. 2009) ............................................................................... 11, 15

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ...................................................................................... 11

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ................................................................................. 7, 11

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) .......................................................................................... 7

*In re TikTok, Inc.*,
    85 F.4th 352 (5th Cir. 2023) ..................................................................................... 11, 15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...................................................................................... 7, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .......................................................................................... 15

*In re: NetScout Sys., Inc.*,
    No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) .......................................... 14

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Intell. Ventures I LLC v. T-Mobile USA, Inc.*,
No. 17-CV-00577, 2018 WL 4175934 (E.D. Tex. June 29, 2018)................................. 11

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
No. 09-CV-283, 2010 WL 11541641 (E.D. Tex. Sept. 30, 2010).................................. 14

*Macronix Int'l Co. v. Spansion Inc.*,
No. 13-cv-679, 2014 WL 934521 (E.D. Va. Mar. 10, 2014)........................................... 13

*Solas OLED Ltd. v. Apple Inc.*,
No. 19-cv-00537, 2020 WL 3440956 (W.D. Tex. June 23, 2020) ................................. 12

*Stellar Restoration Servs., LLC v. James Christopher Courtney*,
533 F. Supp. 3d 394 (E.D. Tex. 2021)............................................................................ 15

*Uniloc USA Inc. v. LG Elecs. USA*,
No. 17-CV-0825, 2018 WL 3419175 (N.D. Tex. May 14, 2018) ................................. 10

*Word to Info, Inc. v. Facebook, Inc.*,
No. 14-CV-4387, 2015 WL 13870507 (N.D. Tex. July 23, 2015)................................. 15

## **Statutes**

28 U.S.C. § 1404(a) ................................................................................................................. 6

28 U.S.C. § 1391(c) ................................................................................................................. 7

I.      INTRODUCTION

This case primarily involves a Taiwan-based plaintiff ("Sung") and a Korea-based defendant (Samsung Electronics Co., Ltd. or "SEC") that sources the allegedly infringing components from three Korea-based suppliers.

Sung—the sole named inventor of the Asserted Patents—resides in Taiwan and has no discernible connection to this District.

SEC likewise has no relevant connection to this District.  Sung's Asserted Patents are directed to "CMP pad dressers," which are used to clean "CMP pads" that are themselves used during semiconductor fabrication.  *See* '862 patent, claim 1; '802 patent, claim 1; '270 patent, claim 1.  None of the asserted claims is directed to end-user products, like smartphones, tablets, or watches.  *Id.*  SEC uses CMP pad dressers at its thirteen semiconductor fabrication facilities ("fabs") in Korea.  SEC does not make or sell the accused CMP pad dressers.  Rather, it purchases those CMP pad dressers from three Korea-based companies:  Shinhan Diamond Ind. Co., Ltd. ("Shinhan"), Saesol Diamond Ind. Co., Ltd. ("Saesol"), and EHWA Diamond Industrial Co. Ltd. ("EHWA").  Shin Decl. ¶ 13.  Thus, the technical evidence concerning the structure of the allegedly infringing CMP pad dressers will primarily come from Korea.  None will come from this District.

Sung's suit ropes in three of SEC's U.S. subsidiaries:  Samsung Electronics America, Inc. ("SEA"), Samsung Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor LLC ("SAS").  Compl. ¶¶ 4–7.  None of those subsidiaries is incorporated in Texas, and only SEA maintains offices in this District.  Shin Decl. ¶¶ 8–10.  But SEA does not make, use, purchase, or sell the accused CMP pad dressers, *id.* ¶ 14, and therefore has little, if any, relevance to this case.

For the reasons explained below, the Northern District of California ("NDCA") is clearly more convenient than the Eastern District of Texas ("EDTX") for the parties and for critical foreign third-party suppliers, each of whose most relevant evidence is located in Asia.  Accordingly,

Defendants respectfully submit that the Court should transfer the case to NDCA.

## II.    BACKGROUND

### A.    The Asserted Patents and Accused Instrumentalities.

The Asserted Patents relate to a "common" semiconductor manufacturing technique called "Chemical Mechanical Polishing (CMP)," which uses a "polishing pad" to create smooth, polished semiconductor wafers.  *See, e.g.*, '862 patent, 1:18–25; '802 patent, 1:40–54; '270 patent, 1:16–24. The asserted claims are directed to "CMP pad dressers," which are devices used to "condition" the polishing pads by "removing dirt and debris" to prolong the polishing pad's lifetime.  '862 patent, 7:15–18; '802 patent, 9:50–64; '802 patent, claim 1 ("A CMP pad dresser"); '270 patent, claim 1 ("A CMP pad dresser"); '862 patent, claim 1 ("A method of conditioning a CMP pad, comprising: pressing a CMP pad dresser against a CMP pad").  The claims are not directed to end-user products like smartphones or home appliances.  *See id.*

Sung alleges that Defendants infringe the Asserted Patents by purchasing and using certain "pad conditioners" (the "accused CMP pad dressers") manufactured by various third parties. Compl. ¶¶ 10–11.  Sung alleges that Defendants use those accused CMP pad dressers to manufacture "semiconductor devices and/or integrated circuits" that are then incorporated into generically identified end-user products like smartphones and home appliances.  *Id.* ¶¶ 11–12.

### B.    Sung Has No Relevant Connection To This District.

Sung resides in Taipei, Taiwan and does not appear to have any connection to this District. *See* Compl. ¶ 2.  Sung's most recent apparent connections to the United States are that he "reside[d] in Cupertino, CA" in July 2020, and that he was deposed in NDCA.  Lewis Decl., Ex. 1, ¶ 3; Ex. 2.

### C.    Defendants' Manufacturing Facilities Are Predominantly Located In Korea.

SEC researches, develops, and uses various semiconductor fabrication processes, some of which include CMP polishing steps.  Shin Decl. ¶¶ 12, 19.  Over time, just like sandpaper used to

2

smooth wood, the CMP pads used to polish semiconductor wafers likewise lose roughness, becoming less effective as a consequence of their use.  *Id.* ¶ 12.  To prolong the CMP pad's useful life, the semiconductor industry generally uses "CMP pad dressers" to remove dirt and debris from the CMP pad and restore the pad's surface roughness.  *Id.*

SEC has thirteen semiconductor fabs that use CMP pad dressers.  *Id.* ¶ 15.  All of those fabs are in Korea.  SEC does not have any fabs in the United States.  *Id.*  All of SEC's engineers who use SEC's CMP processes work and live in Korea.  *Id.* ¶ 23.  All of their documents are located in Korea.  *Id.*  And critically, the materials that describe how and when CMP steps are performed during semiconductor manufacture are highly-confidential "process recipes" located in Korea that are subject to Korea's strict export controls.  *Id.* ¶ 26.

SAS, on the other hand, has only two fabs that use CMP pad dressers.  *Id.* ¶ 17.  Those fab are located in Austin, Texas (in the Western District of Texas ("WDTX")).  In a given month, SAS produces significantly less than one tenth of the semiconductor wafers produced by SEC in Korea (approximately 90,000 versus 1.19 million).  *Id.* ¶¶ 16, 18.  The SAS engineers who use CMP processes (and any relevant documents) are located in or around Austin—not in this District.  *Id.* ¶ 24.  SAS also maintains a research lab (the "Advanced Computing Lab") in San Jose, California, where it designs and develops graphical processing units and systems-on-chip that are used in smartphone, memory, and other products.  Lewis Decl., Ex. 3.

SEC and SAS do not design, make, or sell CMP pad dressers (or even CMP pads).  Rather, SEC and SAS source their CMP pad dressers from third-party suppliers Shinhan, Saesol, and EHWA.  Shin Decl. ¶¶ 13, 20.  Each of those third-party suppliers is headquartered in Korea.  *Id.* ¶ 20; Lewis Decl., Exs. 4–6.

SEC selects and purchases the CMP pad dressers used by SEC and SAS directly from the

three Korean suppliers.  Shin Decl. ¶¶ 13, 19, 20.  SAS similarly purchases CMP pad dressers selected by SEC from two of the three Korean suppliers (Shinhan and Saesol).  *Id.* ¶¶ 19–20.  Thus, information concerning their selection and purchase of CMP pad dressers is primarily located in Korea.

Finally, because CMP is an internal step—among thousands—performed during semiconductor fabrication (and one not discernable to any user of an end device), SEC and SAS do not market their use of CMP pad dressers.  *Id.* ¶ 21.  Thus, SEC and SAS have no materially knowledgeable witnesses or documents relating to the marketing of CMP pad dressers.

With respect to SEA, although it maintains offices in Plano, Texas, it does not manufacture any products.  *Id.* ¶¶ 8, 27.  SEA does not have any fabs in the United States or elsewhere, and does not make, use, purchase, or sell CMP pad dressers.  *Id.* ¶¶ 11, 14.  Accordingly, SEA does not have any employees, documents, or other evidence concerning CMP pad dressers or their use.  Rather, SEA markets and facilitates the sales of end-user products, such as smartphones and televisions, that are designed and manufactured by SEC in Korea.  *Id.* ¶¶ 27, 30.  SEA also maintains office in Mountain View, California.  *Id.* ¶ 8.

SSI is headquartered in San Jose, California and does not have any presence in EDTX.  *Id.* ¶ 9.  SSI does not manufacture any products.  *Id.* ¶ 28.  SSI does not have any fabs in the United States or elsewhere, and does not make, use, purchase, or sell CMP pad dressers.  *Id.* ¶¶ 11, 14.  Accordingly, SSI does not have any employees, documents, or other evidence concerning CMP pad dressers or their use.  Rather, SSI markets and facilitates the sales of memory and semiconductor products that are designed and manufactured by SEC in Korea.  *Id.* ¶¶ 28, 30.

### D.    The Third-Party Suppliers Are Located In Korea, California, And Oregon.

SEC's third-party CMP pad dresser suppliers have critical information concerning the accused CMP pad dressers, and they are all headquartered in Korea.  Lewis Decl., Exs. 4–6.  Two

of those suppliers have connections to California:  Shinhan's U.S. subsidiary, Shinhan Diamond America, Inc., has a sales office in City of Industry, CA; and EHWA has an office in Irvine, CA. Lewis Decl., Exs. 5–6.  The third supplier, Saesol, has an office in Beaverton, OR.  Lewis Decl., Ex. 4.  Thus, critical information concerning the accused CMP pad dressers is certainly located in Korea and, potentially, in California and Oregon.

Moreover, each of those third-party suppliers has critical information concerning product prior art that is central to Defendants' invalidity defenses.  In particular, Defendants intend to rely on Shinhan's ARIX diamond disks, Saesol's Standard diamond disks, and EHWA's CMP Pad Conditioner as prior art that renders the asserted claims invalid.  Lewis Decl., Exs. 7–9.  Those third-party suppliers likely have samples of the prior art, publications, sales records, measurement data, and/or witnesses at their Korea headquarters and, potentially, at their U.S. offices in California or Oregon.

### E.    Evidence Concerning Ownership Of The Asserted Patents Is In Taiwan.

Kinik Co. ("Kinik") is a Taiwanese corporation with headquarters in Taipei, Taiwan. Lewis Decl., Ex. 10.  Kinik and Sung have a lengthy history concerning CMP pad dresser technology and even the Asserted Patents.  Lewis Decl., Exs. 11–12.  In particular, since 1996, Kinik and Sung engaged in multiple joint ventures ("JVs"), which granted Kinik ownership claims to certain intellectual property subject to the JVs.  Lewis Decl., Ex. 12.  Those JVs provoked extensive national and international patent ownership disputes between Kinik and Sung, including some that involved the asserted '802 patent.  Lewis Decl., Ex. 11.  Thus, Kinik likely has information concerning the alleged invention, inventorship, and ownership of the Asserted Patents.

Kinik also has information regarding product prior art.  Specifically, Kinik has information regarding the DiaGrid diamond disks and the Organic Diamond Disks ("ODDs"), related to invalidity of the asserted claims.  Kinik likely has samples of those products, publications, sales

records, measurement data, and/or witnesses in Taiwan.  Lewis Decl., Exs. 13–15.

      **F.**    **Important Third-Party Prior Art Evidence Is Located in NDCA.**

      NDCA is a hotbed for third-party prior art.  In particular, in the early 2000s, LAM Research Corporation ("LAM"), headquartered in Fremont, CA (in NDCA), developed and sold a CMP system called Teres, which Defendants will use to show that the Asserted Patents are invalid. Lewis Decl., Exs. 16–18.  As described in various patents issued to LAM, Teres worked with a CMP pad conditioning system that used CMP pad dressers with diamond grits.  Lewis Decl., Ex. 19 at 3:31–35, 4:45–64; Ex. 20 at 3:27–30, 4:56–5:3, Fig. 1.  Similarly, in the mid-2000s, Applied Materials Inc. ("AMAT"), headquartered in Santa Clara, CA (in NDCA), developed and sold a CMP system called REFLEXION LK, which Defendants will use to show that the Asserted Patents are invalid.  Lewis Decl., Exs. 21–22.  Similar to LAM's Teres, a prior art patent application shows that AMAT's REFLEXION LK worked with a CMP pad conditioning system that used CMP pad dressers.  Lewis Decl., Ex. 23 at [0022].  And at least five engineers who worked on the LAM or AMAT prior art still reside in NDCA.  Lewis Decl., Exs. 24–28.

## III.    LEGAL STANDARD

      "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a).  A moving party satisfies its burden to transfer under § 1404(a) if it shows that the proposed venue is "clearly more convenient" than the original venue.  *In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (citation omitted).  In determining whether that test is satisfied, courts must look at "the situation which existed when suit was instituted."  *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1376 (Fed. Cir. 2021) (citation omitted).

      The threshold question is whether the suit could have been brought in the transferee venue. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If so, the Court

considers a number of private and public interest factors to determine whether transfer is appropriate. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)).

## IV.    ARGUMENT

The Court should transfer this case to NDCA because it is the clearly more convenient forum, venue is proper there, and the relevant factors favor transfer.  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

### A.    This Action Could Have Been Brought In NDCA.

Defendants do not dispute in this case that they are subject to personal jurisdiction in NDCA because they directly or indirectly market, sell, and/or facilitate sales of certain products accused in the complaint in California, including in NDCA.  Shin Decl. ¶¶ 27–30.  Venue is proper in NDCA as to each defendant because:  SEC is a foreign corporation (28 U.S.C. § 1391(c)); SAS maintains an office in San Jose, CA; SEA maintains an office in Mountain View, CA; and SSI is a California corporation with its principal place of business in San Jose, CA.  Shin Decl. ¶¶ 7–10.

### B.    The Private Interest Factors Strongly Favor Transfer.

#### 1.    The Relative Ease Of Access To Sources Of Proof Favors Transfer.

This factor favors transfer because the most relevant sources of proof—technical information concerning the accused CMP pad dressers, information concerning ownership of the Asserted Patents, and information related to the prior art—are primarily located in Korea, Taiwan, and California—each of which is more conveniently accessible from NDCA than EDTX.  There are no relevant sources of proof in this District. *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012) ("This factor will rely on which party has a greater volume of documents relevant to the litigation, and their presumed location in relation to the

7

transferee and transferor venues.").

**a.** **Defendants' Relevant Sources Of Proof Are Not In This District.**

SEC, SEA, SSI, and SAS do not have any relevant documents or witnesses in this District. The asserted claims are directed to CMP pad dressers. *Supra* at p.1. Only SEC and SAS have fabs, so only SEC and SAS have information concerning the accused CMP pad dressers. SEC selects which CMP pad dressers to use, and SEC and SAS purchase those CMP pad dressers from Korean suppliers. Thus, the information in Defendants' possession concerning the accused CMP pad dressers is primarily located in Korea (at SEC) or, to a far lesser extent, in WDTX (at SAS)— not in this District.

Sung will inevitably point to SEA's presence in this District. But Sung cannot dispute that SEA does not have any fabs and, accordingly, does not make, use, purchase, or sell the accused CMP pad dressers. All of Defendants' information relevant to alleged infringement—*i.e.*, whether the CMP pad dressers that SEC and SAS use satisfy the asserted claims—is located in Korea (at SEC) or, to a far lesser extent, in Austin (at SAS). Shin Decl. ¶¶ 23–26. None of that technical information is in this District.

Sung will also presumably point to SEA's sales of end-user products containing semiconductor chips allegedly made using CMP pads that are conditioned using the accused CMP pad dressers. But even if Sung can maintain his dubious assertion that sales of end-user products— rather than the accused CMP pad dressers that allegedly infringe the asserted claims—are somehow relevant, that limited information does not outweigh all of the technical information that is primarily located in Korea at SEC and the third-party suppliers.

**b.** **Critical Third-Party Sources Of Proof Are Located In Korea, California, And Taiwan—None Is Located In This District.**

NDCA is clearly more convenient because relevant third-party evidence is located in

California, Korea, and Taiwan—more easily accessible from NDCA than this District.

*First*, Shinhan, Saesol, and EHWA—from which SEC and SAS purchase the accused CMP pad dressers (Shin Decl. ¶¶ 13, 20)—are all headquartered in Korea.  Lewis Decl., Exs. 4–6.  Thus, evidence pertaining to the design, manufacture, and sales of the accused CMP pad dressers is located in Korea.  Shinhan, Saesol, and EHWA also likely have documents concerning key prior art products—Shinhan's ARIX diamond disks, Saesol's Standard diamond disks, EHWA's CMP Pad Conditioner—that Defendants will show render the asserted claims invalid.  Those documents are certainly located at the suppliers' headquarters in Korea and, potentially, at their offices in California (Shinhan and EHWA) or Oregon (Saesol).  *None* of the third-party suppliers has any presence in this District.  *Id*.

*Second*, Kinik—who has a lengthy history with Sung involving CMP pad dresser technology and even the Asserted Patents—is located in Taiwan.  Lewis Decl., Ex. 10.  Kinik likely has information concerning the alleged invention, inventorship, and ownership of the Asserted Patents.  Lewis Decl., Exs. 11–12.  Kinik also likely has information regarding prior art products—DiaGrid and ODD—that Defendants intend to rely on for invalidity, including physical samples, technical documents, and sales records.  Lewis Decl., Exs. 13–15.

*Third*, LAM, AMAT, and at least five engineers who Defendants believe worked on the Teres and REFLEXION LK prior art systems, are located in NDCA.  They likely have knowledge and documents concerning those prior art systems and their dates of use.

### c.      Sung's Relevant Sources Of Proof Are Not In This District.

Sung has no presence in this District or, it appears, anywhere else in the United States.  Sung resides in Taipei, Taiwan.  *See* Compl. ¶ 2.  Sung's most recent apparent connection to the United States was in NDCA:  he "reside[d] in Cupertino, CA" in July 2020, and he was deposed in NDCA.  Lewis Decl., Ex. 1, ¶ 3; Ex. 2.

*        *        *

Thus, because there are no material sources of proof in this District, and because, on balance, the relevant sources of proof gravitate towards NDCA, this factor favors transfer.  *See Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 316–17 (E.D. Va. 2013) (finding ease of access to sources of proof weighed in favor of transfer in part because defendants "assert that all the technical information about their allegedly infringing monitors and televisions is located in [] Asian offices or in the Northern District of California"); *Uniloc USA Inc. v. LG Elecs. USA*, No. 17-CV-0825, 2018 WL 3419175, at *4 (N.D. Tex. May 14, 2018) ("This factor [] weighs in favor of transfer.  No document or piece of evidence resides in [this district] . . . .").

### 2.    The Availability Of Compulsory Process Strongly Favors Transfer.

This factor strongly favors transfer because important third-party witnesses are located in NDCA—outside the subpoena bounds of this District.  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (stating the availability of compulsory process "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue"); *Empty Barge Lines II, Inc. v. DREDGE LEONARD FISHER*, 441 F. Supp. 2d 786, 796 (E.D. Tex. 2006) ("The Supreme Court has indicated a strong preference for live testimony.").

Here, critical third parties—who Defendants will need to show invalidity based on product prior—are within the subpoena power of NDCA.  Specifically, the witnesses knowledgeable regarding LAM's Teres and AMAT's REFLEXION LK systems are located in NDCA, where LAM and Applied are headquartered.  In particular, prior art patents describing Teres show that the engineers who worked on that technology were—and currently are—located in NDCA.  Lewis Decl., Exs. 19–20, 27–28.  As shown in the public information describing Teres, Teres used CMP pad dressers with diamond particles (Lewis Decl., Ex. 19 at 4:45–64; Ex. 20 at 5:49–52), which

10

are precisely the types of pad dressers that Sung alleges are covered by the Asserted Patents. Similarly, the patent application describing REFLEXION LK shows that the engineers who worked on that technology were—and currently are—located in NDCA.  Lewis Decl., Exs. 23–26. And like the LAM's Teres, AMAT's REFLEXION LK used CMP pad dressers with diamond particles (Lewis Decl., Ex. 23 at [0011]–[0012])—again, precisely the types of pad dressers that Sung alleges are covered by the Asserted Patents.

### 3. The Convenience Of Willing Witnesses Strongly Favors Transfer.

The convenience factor is "probably the single most important factor in [the] transfer analysis."  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1318 (Fed. Cir. 2021) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)).  The convenience factor considers inconvenience to both party and non-party witnesses.  *See Intell. Ventures I LLC v. T-Mobile USA, Inc.*, No. 17-CV-00577, 2018 WL 4175934, at *5 (E.D. Tex. June 29, 2018).  Beyond travel time, courts consider the additional burdens imposed by travel, including layovers, "meal and lodging expenses," and "overnight stays [that] increase[] the time which these fact witnesses must be away from their regular employment."  *Volkswagen I*, 371 F.3d at 204–05.

The Federal Circuit has consistently found that witnesses based in Asia can more conveniently travel to California or other west coast locations than to EDTX, because travel to Texas adds significant distance, time, and expense.  *See In re Nintendo Co., Ltd.*, 589 F.3d at 1199 (cost of attendance factor clearly favored transfer from EDTX to the Western District of Washington in part because four Japanese witnesses would "each have to travel an additional 1,756 miles or 7 hours");  *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023) (where "the 'bulk of relevant witnesses [are] in China[,]' it is indisputable that the Northern District of California is clearly more convenient for these witnesses than the Western District of Texas" (alterations in original)).

Texas courts have likewise recognized that the difference in cost and travel time to NDCA versus Texas for witnesses based in Asia is significant and that transfer alleviates those inconveniences. *See, e.g.*, *Solas OLED Ltd. v. Apple Inc.*, No. 19-cv-00537, 2020 WL 3440956, at *6 (W.D. Tex. June 23, 2020) ("[T]he Court finds that the increased travel time to the WDTX for the third party engineers from Asia is significant. . . . [T]ransfer to the NDCA would alleviate the cost of time and money as opposed to travelling to the WDTX. . . . The inconvenience to non-party witnesses is enough to weigh in favor of transfer; moreover, the inconvenience to party witnesses for similar reasons would supplement this finding regardless of its less weight." (citations omitted)).

Defendants' most relevant witnesses—SEC's CMP engineers—live and work in Korea. Those witnesses would experience significantly greater inconvenience traveling to and testifying in this District as compared with NDCA. *See* Lewis Decl., Exs. 29-30 (showing that travel between Seoul and Plano is significantly less convenient than travel between Seoul and San Franscisco when measured by distance, time, and availability of air travel).

Even more importantly, the third-party suppliers are headquartered in Korea and have offices in California or Oregon—not in this District. Those third-party suppliers make the accused CMP pad dressers. Accordingly, those third-party suppliers have the most relevant technical information concerning the structure of the accused CMP pad dressers—which is the information most relevant to the issue of alleged infringement—and product prior art. It is far more likely that those third-party suppliers will willingly present witnesses at trial if trial occurs in NDCA—closer to their Korean headquarters and closer to their California and Oregon locations. That evidence—in the sole possession of the third-party suppliers—cannot be understated. Each of Sung's asserted claims will require highly confidential and highly technical information concerning the structure—

at the micron scale—of the accused CMP pads, which is in the sole possession of those suppliers. *See, e.g.*, '862 patent, claim 1 (requiring "a CMP pad dresser" that includes "a monolayer" of "superabrasive particles" with differences in "protrusion distance" that is less than "10 microns"); '270 patent, claim 1 (requiring "a CMP pad dresser" that includes "a monolayer" of "superabrasive particles" with differences in "protrusion distance" that is less than "50 microns"); '802 patent, claim 1 (requiring "[a] CMP pad dresser" that includes "a monolayer" of "superabrasive particles" with "tip[s]" that "align[] along a designated profile with a tip variation of from about 5 microns to about 100 microns").

Therefore, because the majority of Defendants' relevant witnesses will travel from Korea, and, critically, because the majority of the third-party suppliers' relevant witnesses will travel from Korea, California, or potentially Oregon, this factor strongly favors transfer to NDCA.  *See Bluestone*, 940 F. Supp. 2d at 318 ("[M]uch of the relevant evidence, and associated witnesses, will likely be found in [NDCA] and Asia.  It cannot be reasonably disputed that procuring the attendance of these inevitable witnesses, some party and some non-party, will be significantly less expensive, and significantly more convenient, in [NDCA], even if they would be otherwise willing to travel across two continents to this District." (citation omitted)); *Macronix Int'l Co. v. Spansion Inc.*, No. 13-cv-679, 2014 WL 934521, at *6 (E.D. Va. Mar. 10, 2014) ("[T]he record indicates that Macronix's witnesses reside in Taiwan, which is more convenient to [NDCA than EDVA] as measured by distance, time, and availability of air travel.").

### 4.    There Are No Practical Problems With Transfer To NDCA.

This factor is neutral because this case is in its infancy.  The Court has not yet entered a scheduling order, Defendants have not filed an Answer, and no discovery has taken place.  Transfer therefore creates no practical problems.  *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 09-CV-283, 2010 WL 11541641, at *1, *4 (E.D. Tex. Sept. 30, 2010) (finding this factor neutral in a case

with a similar timeline – September complaint and January motion to transfer).

Sung's co-pending suit against Texas Instruments ("TI") in this District does not weigh against transfer because:  (1) there is not significant overlap between the TI suit and this suit[1]; and (2) although Sung filed his complaint against TI shortly after filing this complaint, transfer motions are decided based on facts that "existed when suit was instituted," so "[a]ny subsequent familiarity gained by the district court" in the TI case is "irrelevant."  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (citations omitted); *see also In re: NetScout Sys., Inc.,* No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021) ("In previous cases, we have rejected a district court's reliance on considerations of judicial economy arising after the filing of the lawsuit or the transfer motion as irrelevant to the analysis.").

### C.     The Public Interest Factors Favor Transfer.

#### 1.     This District Has No Local Interest In Resolving This Dispute.

The local interest consideration "is based on the principle that [j]ury duty is a burden that ought not to be imposed on the people of a community [that] has no relation to the litigation." *Fairfield Indus. Inc. v. Wireless Seismic, Inc.*, No. 13-CV-903, 2014 WL 4829071, at *4 (E.D. Tex. Sept. 26, 2014) (alterations in original) (internal quotations omitted).  "A local interest is demonstrated by a relevant factual connection between the events and the venue."  *Word to Info, Inc. v. Facebook, Inc.*, No. 14-CV-4387, 2015 WL 13870507, at *4 (N.D. Tex. July 23, 2015).

This District has no meaningful connection to this case because neither the parties nor relevant non-parties have any relevant connection to this District.  Sung and Kinik are located in

---

[1] For example, SEC and SAS use CMP pad dressers from a supplier—Shinhan—that TI does not use, while TI uses CMP pad dressers from a supplier—3M—that SEC and SAS do not use; moreover, the accused products are completely different between the two cases.  Lewis Decl., Ex. 31; *compare* Compl. ¶ 12 (accusing "mobile phones," "smart watches," and "tablets," among others), *with* Lewis Decl., Ex. 32 at ¶ 8 (accusing "amplifiers" and "audio converters," among others).

Taiwan—not in this District.  Indeed, Sung's last known U.S. residence was in Cupertino, CA—in NDCA.  Lewis Decl., Ex. 1.  And Defendants have seen no evidence that Sung has even set foot in this District, let alone performed any work relevant to this case in this District.

SEC and SAS—the defendants who actually use CMP pad dressers—do not have any fabs or relevant employees or information in this District.  And none of the critical third-party suppliers has any connection to this District.  *See In re TikTok*, 85 F.4th at 364 (The local interest "factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." (alterations in original) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317–18 (5th Cir. 2008) ("*Volkswagen II*"))).

Only SEA has any presence in this District (albeit entirely unrelated to the accused CMP pad dressers), but ***each of*** the defendant U.S. entities—SEA, SSI, and SAS—has a presence in NDCA.  Shin Decl. ¶¶ 8–10.  Thus, to the extent Sung argues that this District has a local interest based on SEA's presence in this District, NDCA undoubtedly has a ***greater*** local interest because all three of SEA, SSI, and SAS have offices and employees there.

### 2.     The Remaining Public Interest Factors Are Neutral.

The remaining public interest factors—court congestion, conflicts of laws, and familiarity with governing law—are neutral. Court congestion is the "most speculative [factor]," *In re Genentech*, 566 F.3d at 1347, and, accordingly, is afforded "little weight," *Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 429 (E.D. Tex. 2021).  The court congestion factor is neutral as both forums have a similar number of weighted filings per judgeship. Lewis Decl. Exs. 33–34.  There are no conflict of law issues and both courts are familiar with patent law.

### V.     CONCLUSION

Defendants respectfully request that this Court transfer the case to NDCA.

Dated: January 17, 2024

By:   */s/ Cosmin Maier (with permission by Mandy Nelson)*

Otis Carroll
Collin Maloney
Mandy Nelson
CARROLL MALONEY
HENRY & NELSON PPLC
1327 Dominion Plaza Ste. 100
Tyler, TX 75703
Tel: (903) 561-1600
otis@cmhnlaw.com
collin@cmhnlaw.com
mandy@cmhnlaw.com

John Desmarais (Admitted Pro Hac Vice)
Paul Bondor (Admitted Pro Hac Vice)
Cosmin Maier (Admitted Pro Hac Vice)
Yung-Hoon Ha (Admitted Pro Hac Vice)
Taeg Sang Cho (Admitted Pro Hac Vice)
DESMARAIS LLP
230 Park Avenue
New York, New York 10169
Tel: (212) 351-3400
Fax: (212) 351-3401
jdesmarais@desmaraisllp.com
pbondor@desmaraisllp.com
cmaier@desmaraisllp.com
yha@desmaraisllp.com
tcho@desmaraisllp.com

David Cho (Admitted Pro Hac Vice)
Paxton Lewis (Admitted Pro Hac Vice)
DESMARAIS LLP
1899 Pennsylvania Avenue, NW, Suite 400
Washington, DC 200069
Tel: (202) 451-4900
Fax: (202) 451-4901
dcho@desmaraisllp.com
plewis@desmaraisllp.com

*Attorneys for Defendants Samsung Electronics Co. Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor LLC*

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7(h), I certify that Defendants conferred in good faith about this motion with Plaintiff. Specifically, during the 26(f) conference on January 3, 2024, I, as counsel for Defendants, conferred by teleconference with Plaintiff's counsel and stated that most of the discovery related to this action would be located in Asia. Prior to filing this motion on January 17, 2024, I reiterated that most pertinent discovery would likely come from Asia, and stated that the Northen District of California would clearly be more convenient. Based upon my understanding of Plaintiff's position in this case, it is my belief that Plaintiff opposes this motion.

/s/ Cosmin Maier (with permission by Mandy Nelson)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Mandy Nelson